IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GUNTHER FIEK, | :: | CIVIL ACTION NO. |
| Inmate # GDC 1094511, EF 482307, | :: | 1:07-CV-1443-TWT-WEJ |
| Petitioner, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| FRED BURNETTE, Warden, | :: | PRISONER HABEAS CORPUS |
| Respondent. | :: | 28 U.S.C. § 2254 |

## FINAL REPORT AND RECOMMENDATION

Petitioner, Gunther Fiek, a Georgia prisoner, has filed a 28 U.S.C. § 2254 habeas corpus petition challenging his convictions in the Superior Court of Cobb County for child molestation and aggravated child molestation. Now before the Court are the petition [1]; Respondent's response [7] and exhibits [8 through 13]; Petitioner's additive amendment to habeas petition [24] and subsequent amendments to ground one [29] and ground five [30]; Respondent's amended response to the habeas petition [27]; Petitioner's supplemental pleadings [31, 33, 35-37]; Respondent's supplemental brief in support of his supplemental answer-response [40-2]; and Petitioner's reply [43]. For the reasons stated below, the undersigned **RECOMMENDS** that the petition for a writ of habeas corpus be **DENIED** and this action be **DISMISSED**.

## I.    PROCEDURAL HISTORY

### A.    Jury Trial

Represented by retained counsel, Mr. Jimmy Berry and Ms. Cindi Yeager, Petitioner was tried before a Cobb County jury from August 20 to September 7, 2001, on a twenty-four-count indictment. (See Resp't Ex. 1 [8-5] at 18; Resp't Ex. 2a [9-6] at 97-109.)[1]  The jury found Petitioner guilty on all three counts of aggravated child molestation and on eighteen of the twenty-one counts of child molestation.  On October 22, 2001, Petitioner received a combined sentence of ninety years' imprisonment without the possibility of parole for aggravated child molestation, plus a series of twenty-year sentences on the child molestation counts. (Resp't Ex. 2a [9-7] at 1-2, 12-34.)  See Fiek v. State, 597 S.E.2d 585, 586 (Ga. Ct. App. 2004).

After filing a pro forma motion for a new trial, Petitioner filed an amended motion, claiming that the trial court had erred by doing the following:

(1)    prohibiting him from introducing evidence of non-disclosure witnesses;

(2)    not requiring the State to turn over the SafePath records produced during the investigation;

---

[1] Because the record includes multi-part exhibits, the Court's record citations refer to exhibits by their docket number and PDF page number, and not to internal page numbering.

AO 72A
(Rev.8/82)

(3)     requiring the defense to turn over its work product;

(4)     allowing into evidence out-of-court statements made by the alleged victims;

(5)     allowing into evidence the videotapes of the alleged victims; and

(6)     allowing testimony about the behavioral changes of the alleged victims.

Petitioner also claimed that his rights under the Vienna Convention on Consular Relations had been violated.  (Resp't Ex. 1 [8-3] at 49-50.)  The trial court denied Petitioner's motion for a new trial.  (Resp't Ex. 2a [9-7] at 5-6.)

### B.     Direct Appeal

Represented by his trial attorneys, Mr. Berry and Ms. Yeager, along with Mr. Mitch Durham, Petitioner filed a direct appeal in the Georgia Court of Appeals, enumerating the following errors:

(1)     The trial court's improper admission of massive amounts of hearsay testimony from the parents and through videotapes of interviews with the complainants violated Mr. Fiek's State and Federal Confrontation and Due Process Clause rights;

(2)     The trial court's improper ruling prohibiting Mr. Fiek from using videotapes of 41 non-accusers or even their statements, deprived Mr. Fiek of the opportunity to cross-examine state witnesses and mount a defense, in violation of his State and Federal Confrontation and Due Process Clause rights;

3

(3)     Bolstering and vouching by the state's experts invaded the province of
        the jury and violated Mr. Fiek's State and Federal Confrontation and
        Due Process Clause rights; and

(4)     The evidence is insufficient to support the conviction[s].

(Resp't Ex. 1 [8-2] at 81.)

        The appellate court evaluated the evidence, viewed in the light most favorable

to the verdict, as follows:

> [T]he victims in this case were male children who were students in a tae
> kwon do class taught by Fiek.  Fiek also babysat for some of the
> victims, and interacted socially with several of the victims' families.
> The majority of the victims were molested during tae kwon do classes,
> and most of the molestations involved Fiek touching, rubbing or
> fondling the victims' genitals while the victims and other children in the
> class were doing bending or "bridge" exercises with their eyes closed,
> while the victims were sitting on Fiek's lap, or while they were alone or
> with several other children in an adjacent equipment room.  However,
> several of the molestations occurred while Fiek was babysitting the
> victims or visiting their families for social occasions.  The incidents of
> aggravated child molestation involved three of the victims, who testified
> that Fiek placed his mouth on or licked them on their penis.  These
> incidents also occurred either in the equipment room during class or in
> Fiek's home.

Fiek, 597 S.E.2d at 586-87.  The Georgia Court of Appeals affirmed Petitioner's

judgment of conviction.  Id. at 589.

4

### C.    State Habeas Petition

Represented by new counsel, Petitioner filed a state habeas petition, claiming

that trial counsel provided ineffective assistance by failing to do the following:

(a)     seek a change of venue;

(b)     ask for the jury to be sequestered;

(c-d)   seek admission of critical evidence concerning the non-accusing children (their videotaped interviews and related documents) as necessary to impeach the testimony of the complaining children and to cast doubt upon the techniques investigators used to interview the children;

(e)     subpoena the non-accusing children to testify, and make the non-accuser evidence part of the record on appeal to preserve the issue of whether the trial court erred in excluding that evidence;

(f)     adequately investigate the case, and properly prepare and present "necessary information by which to impeach testifying witnesses"; and

(g)     explore potential juror bias arising from the jurors' twice having viewed Petitioner wearing handcuffs and a waist chain.

(Resp't Ex. 1 [8-2] at 4-6, 34-40; Resp't Ex. 3 [13-2] at 2.)   After holding an

evidentiary hearing (Resp't Ex. 2a [9-2] at 1-150, [9-3] at 1-36), the state habeas

court denied the petition (Resp't Ex. 3 [13-2]), and the Georgia Supreme Court

denied Petitioner's application for further review (Resp't Ex. 4 [13-3]).

**D.**   **Federal Habeas Petition**

In Petitioner's original federal habeas petition, for which he was represented

by new counsel once again, he raised the following grounds for relief:

(1)   his right to the effective assistance of counsel was violated when trial counsel
did not properly challenge the state's use of "massive amounts of hearsay"
evidence;

(2)   his rights to the effective assistance of counsel and to confront the witnesses
against him were violated when trial counsel "did not properly preserve the
record with evidence that would have severely impeached the alleged victims";
and

(3)   his due process rights were violated "by [the] state's key witnesses improper
bolstering of the alleged victims and vouching for their veracity."

(Pet. [1] at 5-6.)   Shortly after Petitioner filed his original habeas petition, he

terminated his federal habeas counsel and sought an extension of time to amend the

petition, which this Court granted.   (See Order of Mar. 18, 2008 [18].)

In his amended petition, filed pro se, Petitioner raised the following additional

grounds for relief:

(4)   the trial court denied him effective assistance of counsel when it denied him
access to certain "very important" exculpatory materials in the control of the
SafePath Children's Advocacy Center, and it denied him substantive due
process when it failed to identify relevant exculpatory evidence during its in
camera inspection of the SafePath materials;

6

(5)     the state habeas court denied him substantive due process in its ruling on cumulative trial counsel error; and

(6)     trial counsel failed to properly investigate the case and therefore "was not aware of the important evidence contained in the non-accusing witness[es]' tapes," which trial counsel could have presented to the jury through the direct trial testimony of those witnesses.

(Additive Amendment [24] at 1-3.)[2]  Later, Petitioner sought to amend grounds one and five of his amended petition, to read as follows:

(1)     "the improper admission of massive amounts of hearsay testimony from parents and through videotapes of interviews with the complain[]ants violated [his] State and Federal constitutional rights under the sixth amendment confrontational clause and due process, fifth and fourteenth amendment[s]";

(5)     he "was denied a full and fair hearing at the state habeas level when the court unreasonably and ridiculously attempted to use <u>Strickland v. Washington</u> to determine ineffective assistance of counsel by refusing to consider the cumulative effects of trial counsel's errors on the fundamental fairness of the trial by following the unconstitutional case law in Georgia . . . ."

_____

[2] Petitioner also claims that he is actually innocent and that his convictions, therefore, constitute a miscarriage of justice. (Additive Amendment at 19-32.)  The Court addressed this claim by separate order and concluded that Petitioner had not offered sufficient evidence of his actual innocence to warrant an evidentiary hearing on the matter.  (<u>See generally</u> Order of Feb. 6, 2009 [34].)  In any event, an allegation of actual innocence "is not a 'claim' for purposes of § 2254. . . . [but] is, instead, a 'gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"  <u>Sibley v. Culliver</u>, 377 F.3d 1196, 1207 n.9 (11th Cir. 2004) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 404, 113 S. Ct. 853, 862 (1993)).

7

(Amendments [29, 30].)  The Court allowed Petitioner's amendments.  (Order of June 22, 2009 [38].)

## II.     STANDARD OF REVIEW

A federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law.  See 28 U.S.C. § 2254(a).  This power, however, is limited.

### A.     Procedural Default

#### 1.     The Federal Bar to Claims Procedurally Defaulted in State Court

Federal habeas review is generally barred for a claim that was procedurally defaulted in state court, i.e., a claim "not resolved on the merits in the state proceeding" based on an "independent and adequate state procedural ground." Wainwright v. Sykes, 433 U.S. 72, 86-87, 97 S. Ct. 2497, 2506-07 (1977) (noting that it was consistent with United States Constitution for state procedural rule to require that alleged error "be challenged at trial or not at all").

> [P]rocedural default can arise in two ways.  First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, Sykes requires the federal court to respect the state court's decision. Second,

8

> if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (citations omitted); see also Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 n.1 (1991) (noting that if (a) petitioner failed to exhaust state remedies and (b) state courts would now find his claims procedurally barred, "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims"); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (holding that "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim").

## 2.    Lifting the Federal Procedural Bar

This bar to federal habeas review may be lifted, however, if the petitioner can demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law, or (2) a fundamental miscarriage of justice, i.e., that he will remain incarcerated despite his actual innocence unless the federal court considers his

9

defaulted claim.  See Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; Murray v. Carrier, 477 U.S. 478, 488-89, 495-96, 106 S. Ct. 2639, 2644, 2649 (1986).

To establish cause for the default, a petitioner must show either that his counsel's assistance was so ineffective that it violated his Sixth Amendment right to counsel or "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray, 477 U.S. at 488, 106 S. Ct. at 2645.  "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim.  Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).

To establish a fundamental miscarriage of justice, i.e., "that constitutional error has caused the conviction of an innocent person," a petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995), and he "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," id. at 327, 115 S. Ct. at 867.  A reviewing court should make the actual innocence determination "in light of all the evidence," and may

10

"consider the probative force of relevant evidence that was either excluded or unavailable at trial." Id. at 327-28, 115 S. Ct. at 867; see also Johnson v. Singletary, 991 F.2d 663, 667 n.4 (11th Cir. 1993) (noting that evidence not presented at trial includes "evidence tenably claimed to have been wrongly excluded or to have become available only after the trial") (citations omitted).

If a petitioner has procedurally defaulted a claim in state court and, even though aware of the default, "makes no attempt to demonstrate cause or prejudice" or a fundamental miscarriage of justice, that "claim is not cognizable in a federal" habeas action. Gray v. Netherland, 518 U.S. 152, 162, 116 S. Ct. 2074, 2081 (1996).

### 3. The Rules of Procedural Default in Georgia Courts

Under Georgia law, a defendant procedurally defaults a claim by failing to raise it at the first available opportunity. See State v. Larocque, 489 S.E.2d 806, 808 (Ga. 1997) (noting that Georgia courts have "long followed the contemporaneous objection rule, which provides that counsel must make a proper objection on the record at the earliest possible time to preserve for review the point of error"). Accordingly, "[e]rrors not raised in the trial court will not be heard on appeal." Earnest v. State, 422 S.E.2d 188, 190 (Ga. 1992). Likewise, "any issue that could have been raised [on direct] appeal but was not, is procedurally barred from

consideration in habeas corpus proceedings absent a showing of adequate cause for the failure to raise it earlier and a showing of actual prejudice." <u>Gaither v. Gibby</u>, 475 S.E.2d 603, 604 (Ga. 1996).

> [A] failure to make timely objection to <u>any</u> alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus.  However, an otherwise valid procedural bar will not preclude a habeas corpus court from considering alleged constitutional errors or deficiencies if there shall be a showing of adequate cause for failure to object or to pursue on appeal and a showing of actual prejudice to the accused.  Even absent such a showing of cause and prejudice, the relief of the writ will remain available to avoid a miscarriage of justice where there has been a substantial denial of constitutional rights.

<u>Black v. Hardin</u>, 336 S.E.2d 754, 755 (Ga. 1985). <u>See</u> O.C.G.A. § 9-14-48(d) (providing that state habeas court shall "consider whether the petitioner made timely motion or objection or otherwise complied with Georgia procedural rules at trial and on appeal," and, if he did not, shall deny him habeas relief absent cause and prejudice or a miscarriage of justice); <u>Head v. Stripling</u>, 590 S.E.2d 122, 128 (Ga. 2003) (stating that "'[m]iscarriage of justice' is primarily associated with its core purpose, i.e., to free the innocent who are wrongly convicted, and should rarely be used to overcome otherwise-valid procedural bars"); <u>Turpin v. Todd</u>, 493 S.E.2d 900, 905

AO 72A
(Rev.8/82)

(Ga. 1997) (noting that "the procedural default standards of § 9-14-48(d) are modeled on the federal standards").

Finally, claims not raised in an initial state habeas petition in Georgia generally may not be raised in a successive petition. See O.C.G.A. § 9-14-51 (providing that "[a]ll grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised . . . in his original or amended petition," and "[a]ny grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition"); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) (stating that O.C.G.A. § 9-14-51 "can and should be enforced in federal habeas proceedings against claims never presented in state court, unless there is some indication that a state court judge would find the claims in question could not reasonably have been raised in the original or amended state habeas petition") (quotation and alterations omitted).

## B.   Merits Review

A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless that adjudication resulted in a

13

decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's determination of a factual issue is presumed correct unless the habeas petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000), the Supreme Court explained that, in applying 28 U.S.C. § 2254(d), a federal habeas court first ascertains the "clearly established federal law" based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  The federal habeas court then considers whether the state court decision is "contrary to" that clearly established federal law, i.e., whether the state court "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or "confronts a set of facts that are materially indistinguishable from" a Supreme Court decision "and nevertheless arrives at a result different from" that decision.  <u>Id.</u> at 405-06, 120 S. Ct. at 1519.

14

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it then considers whether the decision is an "unreasonable application" of that law, i.e., whether "the state court identifies the correct governing legal principle" from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S. Ct. at 1523.  The touchstone of this inquiry is whether the state court's application of federal law is "objectively" unreasonable. Id. at 409, 120 S. Ct. at 1521.  A federal habeas court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411, 120 S. Ct. at 1522.  Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, "imposes a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Stephens v. Hall, 407 F.3d 1195, 1202 (11th Cir. 2005) (internal quotations omitted). "Even clear error, standing alone, is not a ground for awarding habeas relief." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166, 1175 (2003)).

15

**C.     The Law of Ineffective Assistance of Trial Counsel**

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." <u>Id.</u> at 697, 104 S. Ct. at 2070. The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one." <u>Id.</u> at 697, 104 S. Ct. at 2069. First, a federal habeas court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." <u>Id.</u> at 690, 104 S. Ct. at 2066. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689, 104 S. Ct. at 2065. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Id.</u> (internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). Second, a federal habeas court

16

determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability" – one "sufficient to undermine confidence in the outcome" – that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The Court has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may properly be resolved.   As Petitioner has not made a showing sufficient under 28 U.S.C. § 2254(e) to warrant a federal evidentiary hearing, the case is now ready for disposition.

### III.   DISCUSSION

#### A.   Ground One:  Trial Court Improperly Admitted Massive Amounts of Hearsay Testimony

Petitioner first claims that the trial court violated his Sixth Amendment Confrontation Clause and Fourteenth Amendment due process rights when it admitted "massive amounts" of hearsay testimony recounting the alleged victims' reports that Petitioner had molested them.  (Pet. [1] at 5; Amendment [29].)  The Georgia Court of Appeals addressed this claim as follows:

> Fiek first urges that "the State's use of massive amounts of hearsay evidence violated [his] constitutional right to confrontation. …"

17

Specifically, Fiek argues that the trial court erred by admitting the testimony of the victims' parents about statements their children made to them about the molestations, as well as the videotaped interviews of the victims made by law enforcement investigators.  The record shows that Fiek did not object to the evidence at the time it was admitted, and that defense counsel argued at the beginning of the trial that the videotapes were "important" to Fiek's defense to show that the children were unduly influenced.  However, after the State rested, Fiek urged the court to exclude this evidence, arguing that it lacked sufficient indicia of reliability for admission under the Child Hearsay Statute, O.C.G.A. § 24-3-16.

Pretermitting any issue concerning the timeliness of the objection, we find the record supports the trial court's determination that both the testimony of the parents and the videotaped interviews of the children were sufficiently reliable to authorize admission under the Child Hearsay Statute.  In Gregg v. State, 201 Ga. App. 238, 240 (3) (b), 411 S.E.2d 65 (1991), we listed ten factors that the trial court may consider in determining whether a child's out-of-court statement provides sufficient indicia of reliability.   However, we also cautioned that "[t]hese factors are to be applied neither in mechanical nor mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness." Id. at 241.   The "trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under O.C.G.A. § 24-3-16 only if the trial court abused its discretion." (Punctuation and footnotes omitted.)  Conley v. State, 257 Ga. App. 563, 564 (2), 571 S.E.2d 554 (2002).

> The trial court in this case found that as to each child the State has shown a number of factors on the list, including the nature of the statements which they made, the atmosphere under which they were made . . ., I didn't see any threats or any promises to any of the children, there

18

were no drugs or alcohol, the children were generally credible, and there appeared to be no coaching, and the meetings that the parents attended were very general, and the material I've seen is consistent, the statements were very consistent throughout. . . . Although Fiek argues the children's statements were the result of "multiple interviews, repeated questions, peer pressure" and that the children had been coached by their parents and law enforcement officials, the evidence, including the very testimony and videotaped interviews he argues should be excluded, belies and refutes these contentions. And to the extent these arguments "address the credibility of the witnesses themselves[, d]eterminations as to the credibility of a witness are a matter solely within the jury's purview, and such determinations will not be disturbed on appeal." Baker v. State, 252 Ga. App. 238, 241 (1) (b), 555 S.E.2d 899 (2001).

[Moreover], the record shows the victim(s) testified at trial and (were) subject to examination and cross-examination. Thus, [Fiek] had every conceivable opportunity to examine and cross-examine the (children) in the presence of the jury, regarding the (children's) memory of and the circumstances surrounding (their) making of each of the out-of-court statements in question, and had the opportunity to allow the jury to judge the (children's) demeanor in response to any examination or cross-examination about the alleged making and veracity of these previous statements. This procedure provided an additional safeguard to [Fiek's] right of fair trial, and provided [Fiek] full opportunity for confrontation. Accordingly, the trial court did not abuse its discretion in admitting the parents' testimony [or the videotaped interviews] under the Child Hearsay Statute.

19

> Kight v. State, 242 Ga. App. 13, 16-17(1), 528 S.E.2d 542 (2000).
> Ingram v. State, 262 Ga. App. 304, 306(2), 585 S.E.2d 211 (2003);
> Conley v. State, 257 Ga. App. at 565 (2); Medina v. State, 234 Ga. App.
> 13, 15 (1) (b), 505 S.E.2d 558 (1998).

Fiek, 597 S.E.2d at 587-88 (citations omitted).

"The Confrontation Clause states, 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' U.S. Const. Amend VI." United States v. Gari, 572 F.3d 1352, 1361 n.7 (11th Cir. 2009).

> Hearsay is generally defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. Evid. 801(c). Hearsay is admissible if it falls within one of the hearsay exceptions enumerated in Federal Rules of Evidence 803, 804, and 807. But, if a hearsay statement is testimonial, the Confrontation Clause prohibits its admission at trial, even if it falls within a hearsay exception, unless: (1) the statement's declarant is unavailable, and (2) the defendant has had a prior opportunity to cross-examine the declarant.

Id. at 1361 (citing Crawford v. Washington, 541 U.S. 36, 59, 68, 124 S. Ct. 1354, 1369, 1374 (2004)). The Crawford rule governs Petitioner's case because it was not final on direct review when the Supreme Court issued the rule.[3] See Whorton v. Bockting, 549 U.S. 406, 416, 421, 127 S. Ct. 1173, 1180-81, 1184 (2007) (noting that new rule of criminal procedure that is not "watershed" rule, such as the Crawford

---

[3] The Crawford decision was published on March 8, 2004, and the Georgia Court of Appeals affirmed Petitioner's judgment of conviction on March 24, 2004.

rule, "is generally applicable only to cases that are still on direct review," and holding that Crawford rule does not apply retroactively to cases on collateral review).

"However, Crawford did not alter the law with respect to non-testimonial hearsay." United States v. Underwood, 446 F.3d 1340, 1346 (11th Cir. 2006) (noting that Crawford Court stated that "[w]here non-testimonial hearsay is at issue, it is wholly consistent with the framers' design to afford the States flexibility in their development of hearsay law – as does Roberts"); United States v. Baker, 432 F.3d 1189, 1204 (11th Cir. 2005) (noting that "[a]dmission of non-testimonial hearsay against criminal defendants is not governed by Crawford," and citing Ohio v. Roberts, 448 U.S. 56, 66, 100 S. Ct. 2531 (1980), for proposition that such hearsay "still violates the Confrontation Clause unless the statement falls within a firmly rooted hearsay exception, or otherwise carries a particularized guarantee of trustworthiness"); see also United States v. Taylor, 278 F. App'x 937, 941 (11th Cir. 2008) (noting that Crawford court's examples of testimonial statements "all involve statements made under circumstances which would lead the declarant to believe that the statement would be available for use at a later trial").

Further, because the accusing children testified at Petitioner's trial and were subject to cross-examination by Petitioner's counsel, the admission of their prior

statements to their parents and their videotaped statements to investigators did not violate the rule established in Crawford.  See United States v. Garcia, 447 F.3d 1327, 1335-36 (11th Cir. 2006) (holding that law enforcement agent's hearsay testimony regarding statement made by cooperating coconspirator did not violate "Sixth Amendment, as interpreted in Crawford, [which] bars the admission of the out-of-court statements of declarants who do not testify at trial," because coconspirator declarant "testified at trial . . . [regarding] the same statement" challenged by Sixth Amendment claimants, who had "ample opportunity to confront and cross-examine" coconspirator at trial); see also United States v. Townley, 472 F.3d 1267, 1271-72 (10th Cir. 2007) (stating that "[i]n Crawford, the Supreme Court held that the admission at trial of testimonial hearsay would violate the Confrontation Clause unless the declarant testified or, where unavailable, was previously subject to cross-examination by the defendant regarding the objectionable statements") (emphasis added); Sheffield v. Sec'y, Dep't of Corr., No. 8:07-cv-1413-T-17TGW, 2009 U.S. Dist. LEXIS 55116, at *9 (M.D. Fla. June 11, 2009) (stating that "Crawford is inapplicable . . . because the hearsay declarant . . . testified at [petitioner's] trial and was subjected to cross-examination by the defense").

22

Moreover, a Confrontation Clause violation warrants federal habeas relief only if "the error had substantial and injurious effect or influence in determining the jury's verdict." Mason v. Allen, No. 09-12195, 2010 U.S. App. LEXIS 9646, at *17-18 (11th Cir. May 11, 2010) (citing Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993)). To satisfy this standard, "there must be 'more than a reasonable possibility that the error contributed to the [conviction or] sentence.'" Id. at *18 (citing Horsley v. State of Ala., 45 F.3d 1486, 1493 (11th Cir. 1995)). Federal courts "analyze the effect of [a] Confrontation Clause violation by looking at several factors, including the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." Id. (citation and internal quotations omitted.)

The Georgia Court of Appeals conducted a thorough review of the trial court's decision to admit both the testimony of the parents about what their children had told them and the children's statements that were videotaped by police investigators. The appellate court affirmed the trial court's determination that both "were sufficiently reliable to authorize admission under the Child Hearsay Statute" in Georgia. Fiek,

23

597 S.E.2d at 587.  Petitioner has not demonstrated that the trial court's determination was contrary to, or an unreasonable application of, clearly established federal law. See Williams, 529 U.S. at 411, 120 S. Ct. at 1522.  Therefore, Petitioner's first ground for relief fails in its entirety.

**B.     Ground Two:  Trial Counsel Failed to Preserve the Record for Appeal**

In ground two, Petitioner alleges that trial counsel provided ineffective assistance by failing to preserve for appellate review certain evidence vital to his defense, namely, the videotapes of those students in Petitioner's tae kwon do classes who did not accuse him of molesting them.  (Pet. at 5.)  On direct appeal, Petitioner argued that "the trial court erred by granting the State's motion in limine to exclude the videotapes of the tae kwon do students who were interviewed by police but did not accuse him of any acts of molestation."  Fiek, 597 S.E.2d at 588.  The Georgia Court of Appeals addressed this claim as follows:

> The record shows that the State made a pretrial motion to exclude any testimony by defense witnesses that might be offered to show that Fiek had not molested other children with whom he had contact on the basis that such testimony was not admissible to show good character.  The trial court did not abuse its discretion by disallowing this testimony.
>
> On appeal, Fiek argues that the videotapes were admissible to present his defense and to protect his confrontation rights and were not

24

offered for the impermissible purpose of showing his good character. However, he points to no place in the record where he sought admission of the videotapes on this basis or where this argument was urged and rejected below. Instead he cites this Court to a portion of the transcript where his counsel argued that he should be allowed to question the State's witness about the number of people she interviewed in connection with her investigation. The trial court allowed Fiek to question the witness concerning whether she had made videos of interviews with children other than the victims. At no time during this colloquy did defense counsel urge the argument now made on appeal — that the trial court should admit the videotapes of these children to protect his confrontation rights.

Moreover, Fiek acknowledges that the videotapes of the other students who were interviewed by this witness and other investigators were never made part of the record or proffered below, but urges that we accept and review his transcription of this evidence. But it is well established appellate procedure that this Court is unable to consider matters outside the record and transcript.

Id. (citations omitted.)

In his state habeas petition, Petitioner claimed that "trial counsel was constitutionally ineffective for failing to make a part of the record videotapes of various tae kwon do students who were interviewed by the police but who did not accuse the Petitioner of any acts of molestation." (Resp't Ex. 3 [13-2] at 5.) The state habeas court noted that the Georgia Court of Appeals "held that the trial court did not abuse its discretion by disallowing this testimony." (Id.) After reviewing the tapes," the court concluded that "Petitioner has failed to demonstrate that there is a

25

reasonable probability that the results at trial or appeal would have been different if the tapes had been made a part of the record or proffered below." (Id.)

This Court previously addressed the significance of the interviews of the non-accusing children when it considered, and denied, Petitioner's motion for an evidentiary hearing regarding his assertion of actual innocence. The Court made the following findings:

> In connection with his state habeas proceedings, Petitioner presented the transcripts of the videotaped interviews of the non-accusing children, which interviews had been excluded from the trial. Petitioner claims that these interviews demonstrate the fabricated nature of the State's case against him, but he has not indicated which interviews contain "new reliable evidence" of his innocence. Nevertheless, the Court has undertaken an independent examination of all of the transcripts in the record ([8-3] at 95-100; [8-4]; [8-5] at 1-13), and has discovered only two interviews that contain statements casting doubt in specific terms upon the trial testimony of a child who accused Petitioner of molesting him: (1) the interview of L.K., who denied that he had ever seen Petitioner touch Joseph (ostensibly J.P.) "in his private parts" ([8-4] at 97; see Mot. for Evid. Hr'g Ex. G (L.K.'s SafePath face sheet indicating that J.P. was "lying")); and (2) the interview of A.S., . . . in which A.S. stated that Campbell's (ostensibly C.B., one of Petitioner's accusers) statement that somebody had touched A.S. "on [his] wiener" was "a lie" ([8-4] at 44-46).

(Order of Feb. 6, 2009 at 11-12 (citations omitted).)  As the Court noted, however, "A.S. did not contradict C.B.'s claim that C.B. himself had been molested, nor did L.K. contradict J.P.'s similar claim." (Id. at 16.)

26

The state habeas court found that trial counsel was not ineffective for failing to preserve for appellate review the videotapes at issue because there was not a reasonable probability that the outcome of Petitioner's trial or appeal would have been different had counsel done so. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Given the great weight of the evidence against Petitioner, including the courtroom testimony of virtually every one of his accusers, this Court concludes that the state habeas court's finding in this regard was neither contrary to, nor an unreasonable application of, clearly established federal law. See Williams, 529 U.S. at 411, 120 S. Ct. at 1522. Accordingly, ground two fails.

### C.   Ground Three:  Improper Bolstering of the Alleged Victims

Petitioner next claims that his due process rights were violated when the state's key witnesses improperly bolstered the testimony of the alleged victims and vouched for their truthfulness. (Pet. at 6.) Petitioner raised this claim on direct appeal, and the Georgia Court of Appeals addressed it as follows:

> Fiek next contends that the State's expert witnesses impermissibly bolstered the testimony of the victims and "vouched for their veracity." However, Fiek's contentions provide no basis for reversal, as more fully set forth below.
>
> (a) The testimony of Detective Mary Finlayson that Fiek now finds objectionable as impermissibly bolstering was in direct response

27

to questions posed by defense counsel on cross-examination, and her response was admitted without objection. Matters not objected to at trial cannot be raised for the first time on appeal. Likewise, self induced error cannot be complained of on appeal.

(b) Jinger Robins testified concerning forensic interview techniques and forensic interview critiques after being qualified without objection as an expert in those areas. Fiek now urges that this testimony bolstered the testimony of the parents and investigators who denied using improper interview techniques. However, the record shows that defense counsel was instructed to make his bolstering objections to the witness' testimony critiquing the videotaped interviews as needed and that the trial court would "deal with each objection as they are made." The record further shows that no objections were urged on this basis after this ruling. Thus, there is nothing for this court to consider on appeal.

Fiek also now finds objectionable Robins' testimony that "most research studies" have indicated that it is "rare" for children to state false beliefs if they have only been interviewed once and for a limited amount of time. Again, no objection was made to this testimony, thus precluding appellate review. Moreover, it was not improper.

(c) Fiek also contends that the testimony of Karen Nash about the disclosure process in children, especially boys, "validated and vouched for the accusations in this case. . . ." However, the record shows that the State made a proffer of this witness' testimony outside the presence of the jury in order to avoid the error Fiek now urges, and that Fiek did not object following the proffer or at any time during the subsequent testimony of the witness. Moreover, our review of the testimony shows that it was not objectionable in any event.

Fiek, 597 S.E.2d at 588-89 (citations omitted).

28

As noted supra, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." Alderman, 22 F.3d at 1549.  Here, the Georgia Court of Appeals applied independent state procedural grounds, as cited throughout its discussion of Petitioner's ground three claim, to find that Petitioner had waived any possible appellate challenge to the testimony of the State's experts by not objecting to that testimony when given the opportunity to do so during his trial.  Accordingly, Petitioner has procedurally defaulted his ground three claim for purposes of federal habeas review.  See Sykes, 433 U.S. at 86-87, 97 S. Ct. at 2506-07.  Moreover, Petitioner has not shown cause to excuse his procedural default, nor has he made a convincing showing of his actual innocence.  (See generally Order of Feb. 6, 2009.)  Therefore, this Court declines to address the merits of Petitioner's procedurally defaulted ground three claim.  See Netherland, 518 U.S. at 162, 116 S. Ct. at 2081.

**D.     Ground Four:  Denial of Access to Exculpatory Materials**

In ground four, Petitioner claims that he "was denied effective assistance of trial counsel when the trial court precluded the defense from acquiring very important material, which was exculpatory, relating to evidence in SafePath Children's

29

Advocacy Center's control; concomitantly, the court denied [him] substantive due process, contrary to the United States Constitution, 5th and 14th Amendments when it failed to identify material exculpatory evidence when conducting an in camera inspection of SafePath's files, 24 each, of accusing witnesses."   (Additive Amendment at 1-2.)  However, Petitioner did not raise this claim either on direct appeal or in his state habeas petition.  Accordingly, this claim is unexhausted, and because Petitioner would not be able to obtain merits review of the claim in a second state habeas petition, it is also procedurally defaulted.  See Coleman, 501 U.S. at 735 n.1, 111 S. Ct. at 2557 n.1; Chambers, 150 F.3d at 1327.  Therefore, for the reasons noted with respect to Petitioner's ground three claim, this Court also declines to address the merits of his ground four claim.

**E.     Ground Five:  Cumulative Trial Counsel Error**

Petitioner next claims that he was denied a full and fair hearing during his state habeas proceedings when the state habeas court failed to consider the cumulative effect of his trial counsel's errors.  (Additive Amendment at 2; Amendment [30].)  However, alleged deficiencies by a state habeas court in addressing a state prisoner's claims do not give rise to a claim for relief that is cognizable in federal habeas proceedings.  See Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) (stating

AO 72A
(Rev.8/82)

that "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief"). Accordingly, ground five fails.[4]

### F.     Ground Six:  Trial Counsel's Failure to Investigate

Finally, Petitioner claims that trial counsel provided ineffective assistance in that "counsel did not properly investigate the case before trial and consequently was not aware of the important evidence contained in the non-accusing witness' tapes [that] could have been obtained through direct testimony of the uninterviewed and uncalled non-accusing children which would have severely impeached the testimony of some accusing witnesses, state experts, and the detectives." (Additive Amendment at 2-3.) The state habeas court denied Petitioner's claim that trial counsel failed to prepare adequately for trial, finding that "counsel was thoroughly prepared to represent the Petitioner at the trial and on appeal, and that Attorney Berry worked with co-counsel Cindi Yeager who was very familiar with the Cobb County

---

[4] Moreover, even if Petitioner had properly raised a claim of cumulative trial counsel error in his state habeas proceedings, which he did not, this Court would not grant him federal habeas relief on that basis, as Petitioner simply has not offered sufficient evidence of trial counsel's alleged ineffectiveness to prevail on such a claim.  See, e.g., Spears v. Mullin, 343 F.3d 1215, 1251 (10th Cir. 2003) (holding that "[b]ecause the sum of various zeroes remains zero, the claimed prejudicial effect of [trial counsel's] cumulative errors does not warrant habeas relief").

prosecutor's procedures in dealing with child molestation cases." (Resp't Ex. 3 [13-2] at 5.) The court found "that the defense reviewed all of the videotapes and statements, and were thoroughly prepared to represent the Petitioner at trial." (Id.) The court also found that "trial counsel acted properly and, in fact, conducted a thorough investigation into Petitioner's case," that counsel's conduct fell "within the wide range of reasonable, professional conduct and that counsel's decisions were made in the exercise of reasonable, professional judgment." (Id. at 6.) See Strickland, 466 U.S. at 689-90, 104 S. Ct. at 2065-66. Moreover, as noted supra, this Court also conducted an independent review of the transcripts of the interviews of the non-accusing children and found very little, if any, exculpatory material in those interviews. Therefore, Petitioner was not prejudiced by trial counsel's alleged failure to realize the significance of the interviews. See id. at 694, 104 S. Ct. at 2068. Accordingly, the state habeas court's denial of Petitioner's ground six claim was neither contrary to, nor an unreasonable application of, clearly established federal law. See Williams, 529 U.S. at 411, 120 S. Ct. at 1522. Ground six also fails.

IV.   **CERTIFICATE OF APPEALABILITY**

A state prisoner must obtain a certificate of appealability ("COA") before appealing the denial of his federal habeas petition. 28 U.S.C. § 2253(c)(1)(A). This

Court "must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner.  Rule 11(a) of the Rules Governing Section 2254 Cases (also providing that "[i]f the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22").

A COA may issue only when the petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v . McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (internal quotations omitted). A petitioner need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." Lamarca v. Sec'y, Dep't of Corr., 568 F.3d 929, 934 (11th Cir. 2009) (citing Miller-El v. Cockrell, 537 U.S. 322, 337, 342, 123 S. Ct. 1029, 1039 (2003)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, as here, a certificate of appealability should issue only when the prisoner shows both that jurists of reason

33

would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Jimenez v. Quarterman</u>, _ U.S. _, 129 S. Ct. 681, 684 n.3 (2009) (internal quotations omitted) (citing <u>Slack</u>, 529 U.S. at 484, 120 S. Ct. at 1603-04).

The undersigned finds no issue of arguable merit in the instant federal habeas petition and, therefore, recommends that Petitioner not be granted a certificate of appealability.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS RECOMMENDED** that the petition for a writ of habeas corpus [1] be **DENIED** and this action be **DISMISSED**.

The undersigned further **RECOMMENDS** that Petitioner not be granted a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED** this 22nd day of June, 2010.

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

34

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GUNTHER FIEK, | :: | CIVIL ACTION NO. |
| Inmate # GDC 1094511, EF 482307, | :: | 1:07-CV-1443-TWT-WEJ |
|     Petitioner, | :: | |
| | :: | |
|     v. | :: | |
| | :: | |
| FRED BURNETTE, Warden, | :: | PRISONER HABEAS CORPUS |
|     Respondent. | :: | 28 U.S.C. § 2254 |

## ORDER FOR SERVICE OF
## <u>FINAL REPORT AND RECOMMENDATION</u>

Let this Final Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and the Court's Local Rule 72.1B, be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Final Report and Recommendation within fourteen (14) days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Final Report and

Recommendation may be adopted as the opinion and order of the District Court, and

any appellate review of factual findings will be limited to a plain error review.

United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Final Report and Recommendation with

objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 22nd day of March, 2010.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2

AO 72A
(Rev.8/82)